IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | | |
|---|---|---|
| Stanley L. Reeder, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:12cv796 (JCC/JFA) |
| | ) | |
| Dr. Militani, et al., | ) | |
| Defendants. | ) | |

FILED DEC 16 2013

## MEMORANDUM OPINION

Stanley L. Reeder, a convicted sex offender who formerly was civilly committed to the Virginia Center for Behavioral Rehabilitation ("VCBR"), brought this pro se action pursuant 42 U.S.C. § 1983, alleging that he suffered deliberate indifference to his serious medical needs at that facility. The action initially was filed in the United States District Court for the District of South Carolina, where Reeder now resides. By Order dated June 29, 2012, it was transferred t to this district in accordance with 28 U.S.C. § 1391(b). The matter is now before the Court on Motions to Dismiss or in the Alternative Motions for Summary Judgment filed separately by defendants Nurse Mary Jane Gibbons and Andrew M. Johnson. Defendants have submitted memoranda of law and exhibits in support of their positions, and provided plaintiff with notice and the opportunity to file responsive materials, as required by Local Rule 7(K) and Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975). Plaintiff has filed a reply. For the reasons which follow, defendants' Motions for Summary Judgment will be granted, and summary final judgment will be entered in their favor. Because defendant Dr. Militani was not served within 120 days of the filing of the complaint, he will be dismissed from the action pursuant to Fed. R. Civ. P. 4(m).

1

## I. Background

The following material facts are uncontested. Plaintiff was civilly committed to VCBR on April 6, 2010, after he was found to be a sexually violent predator by the Circuit Court for Arlington County, Virginia. On August 20, 2011, defendant Nurse Gibbons saw plaintiff for aches he experienced in his right shoulder after playing basketball. Gibbons Aff. ¶ 3. She notified Dr. Militani, who prescribed Tylenol, and plaintiff was directed to return to the clinic if needed. Id.

On August 24, 2011, Nurse Gibbons was called to plaintiff's pod at 6:30 a.m. When she arrived, plaintiff was sitting on the floor complaining of pain in his shoulder and back, and stating that he needed a wheelchair to get medication. Gibbons Aff. ¶ 4. Plaintiff admitted that he had continued to play basketball, and stated that he had put in two requests to see a physician. Id. Nurse Gibbons observed that plaintiff was "irritable" and was being "egged on" by a peer. Id. He was not wheezing, grimacing, or sweating, and Nurse Gibbons saw him move his feet. Id. She told plaintiff that the physician would be notified, and she placed him on the list to be seen by the doctor. Id. Security subsequently informed her that after she left, plaintiff "jumped right up" and was seen walking without difficulty. Id. Nurse Gibbons had no further involvement with plaintiff that day. Id.

Plaintiff's medical records reflect that he was seen at 9:05 that morning in the medical department, where Nurse Keene took his vital signs. Gibbons Aff. ¶ 5. At 10:15 a.m., while plaintiff was still in the medical department, Nurse Whitehurst informed Dr. Moja that plaintiff was not receiving pain relief from a Toradol injection. Gibbons Aff. ¶ 6. At 11:05 a.m., plaintiff complained to Nurse Whitehurst that his right arm was numb, and the nurse informed Dr. Moja.

Gibbons Aff. ¶ 7. At 9:00 that night, plaintiff was seen by Dr. Militani, and had no further complaints of pain or numbness in his arm. Gibbons Aff. ¶ 8. Nurse Ward took plaintiff's vital signs, and Dr. Militani discharged him from the medical department to return to his pod. Id.

The following day, August 25, 2011, Nurse Gibbons saw plaintiff at 6:45 a.m. for continuing discomfort. She checked his vital signs and found them to be within normal limits. Gibbons Aff. ¶ 9. Plaintiff's medical records show that he was seen by medical staff at 7:30 a.m., and it was noted that he was alert, oriented, and mobile in bed, and was complaining of pain in the right side of his back. Gibbons Aff. ¶ 10. That afternoon at 2:40, plaintiff was seen again by medical staff after complaining that he felt a rumble in his chest. Plaintiff's lungs were clear, his temperature was 98 degrees, and his oxygen saturation was 96%. He was scheduled for a chest x-ray the following day. Gibbons Aff. ¶ 11. Plaintiff was returned to his pod at 4:05 p.m. pursuant to his physician's order. Gibbons Aff. ¶ 12. Another nurse took plaintiff's vital signs at 9:36 that evening and noted that he had no complaints and was not in distress. Gibbons Aff. ¶ 13.

The following morning at 6:45 a.m., Nurse Gibbons noted that plaintiff had left VCBR for his x-ray. She had no further involvement with his care. Gibbons Aff. ¶¶ 14-15.

Defendant Andrew Johnson was employed as a Facility Manager at VCBR during the events in question. Johnson Aff. ¶ 1. Johnson "hold[s] no professional licenses or designations, medical or otherwise." Johnson Aff. ¶ 2. Instead, he is an instructor with Therapeutic Options of Virginia and has taught VCBR staff members "how to talk to a person (i.e., a VCBR resident) going through a crisis or a behavioral emergency." Johnson Aff. ¶ 2. He is also certified in cardiopulmonary resuscitation ("CPR"). Id.

On August 24, 2011, Johnson worked at VCBR from 4:30 a.m. until 12:30 p.m. Johnson

Aff. ¶ 8(a). At around 6:30 a.m. on that day, he heard a residential service associate ("RSA") call for a nurse to come to the day room on Unit 2D. Upon hearing this call, Johnson left his office to go to see what was happening. Johnson Aff. ¶ 8(b). When he reached the day room, Johnson saw plaintiff sitting upright by the slider on the floor, with the RSA beside him. Plaintiff said he was hurting and needed a nurse; Johnson does not recall whether plaintiff mentioned any specific pain. Johnson Aff. ¶ 8(c). However, the RSA advised Johnson that Nurse Gibbons had already responded to the call and had already left. Nurse Gibbons had asked plaintiff some questions and directed him to try to get up, and had informed plaintiff that she had placed him on the schedule to see the doctor between 8:30 and 9:00 that morning. Johnson Aff. ¶ 8(d). Johnson assisted the RSA in helping plaintiff to get up off the floor and to sit in a chair. Although plaintiff continued to say he was sore and hurting, he did not struggle for breath or grab his chest. Johnson Aff. § 8(e). Johnson left after spending a little over ten (10) minutes with plaintiff, who at that point was sitting in a chair in the day room with the RSA still by his side. Johnson Aff. § 8(f). Upon leaving the day room Johnson went to the medical department to talk to Nurse Gibbons, who stated that she had signed plaintiff up to see the doctor that morning. Johnson Aff. ¶ 8(g). Johnson did not see plaintiff again that day. Johnson Aff. § 8(h).

Plaintiff's response to defendants' motions and affidavits (Dkt. 30) states in its entirety:

> Plaintiff Mr. Stanley Reeder hereby denies all allegations of respondents motion to dismiss and states for the record that his previous filed complaint should stand as wittness [sic] to facts[.] The defendants/respondents are guilty of willful medical neglect which lead [sic] to permenty [sic] injurys and disabilitys [sic] which caused plaintiff Mr. Stanley Reeder perment [sic] total heart related disabilitys causing plaintiff pain, suffering, agony and total disability which has left him unable to work or make any gainfull [sic] employment. And totally disabled. I hereby request a trial before the

court.

## II. Standard of Review[1]

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the burden of proving that judgment on the pleadings is appropriate. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (moving party bears the burden of persuasion on all relevant issues). To meet that burden, the moving party must demonstrate that no genuine issues of material fact are present for resolution. Id. at 322. Once a moving party has met its burden to show that it is entitled to judgment as a matter of law, the burden then shifts to the non-moving party to point out the specific facts which create disputed factual issues. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Electrical Industrial Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, a district court should consider the evidence in the light most favorable to the non-moving party and draw all reasonable inferences from those facts in favor of that party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Those facts which the moving party bears the burden of proving are facts which are material. "[T]he substantive law will identify which facts are material. Only disputes over facts which might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson, 477 U.S. at 248. An issue of material fact is genuine when, "the evidence ... create[s] [a] fair

---

[1] Both defendants have moved to dismiss and in the alternative for summary judgment. Because both motions are supported by affidavits, the Court finds it more appropriate to analyze both pursuant to the more rigorous standard for summary adjudication.

doubt; wholly speculative assertions will not suffice." Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir. 1985). Thus, summary judgment is appropriate only where no material facts are genuinely disputed and the evidence as a whole could not lead a rational fact finder to rule for the non-moving party. Matsushita, 475 U.S. at 587.

Here, plaintiff's pleading in opposition to defendants' motions for summary judgment is inadequate as a matter of law to create a genuine issue of fact sufficient to preclude the entry of summary judgment. The nonmoving party may not defeat a properly-supported summary judgment motion by simply substituting the "conclusory allegations of the complaint or answer with conclusory allegations of an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990). This is true even where the nonmoving party in such a situation is a pro se prisoner entitled to liberal construction of his pleadings; a "declaration under oath ... is not enough to defeat a motion for summary judgment. He has to provide a basis for his statement. To hold otherwise would render motions for summary judgment a nullity." Campbell-El v. Dist. of Columbia, 874 F.Supp. 403, 406 - 07 (D.C. 1994). Here, the factual allegations in plaintiff's opposition motion amount to nothing more than a conclusory recapitulation of the complaint, without additional supporting evidence. Although plaintif includes in his pleading a declaration that his statements are true, the response merely asserts that the "complaint should stand" and thus is insufficient to preclude summary judgment. Doyle v. Sentry Ins., 877 F.Supp.1002, 1005 (E.D. Va. 1995) (Merhige, J.) (to defeat a motion for summary judgment, a nonmoving party cannot rely on "mere belief or conjecture, or the allegations or denials contained in the pleadings."

### III. Analysis - Nurse Gibbons

Defendant Gibbons argues first that plaintiff's claim should be dismissed because he argues that the events at issue constituted deliberate indifference to his serious medical needs in violation of his rights under the Eighth Amendment. Defendant is correct that because plaintiff was civilly committed at the time the events occurred, the Eighth Amendment does not apply. See Youngberg v. Romeo, 457 U.S. 307 (1982); Patten v. Nichols, 274 F.3d 829 (4th Cir. 2001). Instead, plaintiff's claim arises under the due process clause of the Fourteenth Amendment, Bell v. Wolfish, 441 U.S. 520, 535-36 (1979); Ingraham v. Wright, 430 U.S. 651, 671-72 (1977), and as defendant notes, the complaint does not assert a claim under the Fourteenth Amendment. Def. Gibbons' Mo. at 6, n. 1. However, it is apodictic that courts are obliged to analyze pro se complaints liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972). It is also true that the due process rights of an unconvicted or civil detainee are "at least as great as the Eighth Amendment protections available to a convicted prisoner." City of Revere v. Mass. Gen'l Hosp., 463 U.S. 239, 244 (1983). Therefore, in deference to plaintiff's pro se status, the Court will overlook his mistaken reliance on the Eighth Amendment, and will analyze the merits of his claim against Nurse Gibbons pursuant to the applicable standard of the Fourteenth Amendment.

Pursuant to Va. Code § 37.2-909, the purpose of the involuntary civil commitment sexual predators is not punishment, but rather "control, care and treatment." Where a person is subject to involuntary civil commitment, "adequate food, shelter, clothing, and medical care" are "the essentials of the care that the State must provide." Youngberg, 457 U.S. at 324. In evaluating a claim of inadequate medical care brought by a civilly committed detainee, the appropriate standard is that of professional judgment. The Court in Youngberg stressed that "the

7

Constitution only requires that the courts make certain that professional judgment was in fact exercised," and "[i]t is not appropriate for the courts to specify which of several professionally acceptable choices should have been made." Thus, "liability may be imposed only when the decision by the professional is such a substantial departure from accepted professional judgment, practice or standards as to demonstrate that the person responsible actually did not base the decision on such a judgment." Youngberg, 457 U.S. at 321-23; accord, Turner v. Herrick, 2011 WL 3320820 (E.D. Va. July 29, 2011) (Hilton, J.), aff'd, 465 Fed. App'x 250 (4th Cir. Feb. 14, 2012); see also, Patten, 274 F.3d at 840 (applying professional judgment standard to claim of inadequate medical care brought by estate of involuntarily committed psychiatric patient). The professional judgment standard is not equivalent to a medical malpractice standard; rather, a plaintiff to prevail must show that the decision or action in question was "a sham or otherwise illegitimate." Patten, 274 F.3d at 845. The proper inquiry is whether the care provided was so completely out of bounds as to make it explicable only as an arbitrary, nonprofessional choice, and in making such rulings the courts must defer to the necessarily subjective aspects of the decisional processes of institutional medical professionals and accord those decisions the presumption of validity. Id.

When the foregoing criteria are applied here, it is readily apparent the care Nurse Gibbons provided to plaintiff did not run afoul of the professional judgment standard. The uncontroverted evidence demonstrates that she reacted to plaintiff's complaints of pain by assessing him in his pod early in the morning of August 24, 2011. She did not observe plaintiff exhibiting any symptoms that might suggest acute distress, such as wheezing, grimacing or sweating, and she scheduled him to see the doctor later that same day. She went off duty an hour later and had no

further involvement with or control over what happened to plaintiff after that. As Nurse Gibbons had arranged, plaintiff was seen by the doctor later that morning and was deemed well enough to be returned to his pod in the evening. There is nothing whatever to suggest that this care plaintiff received from Nurse Gibbons was "so completely out of bounds as to make it explicable only as an arbitrary, nonprofessional choice." Cf. Patten, 274 F.3d at 845. The unfortunate fact that plaintiff allegedly suffered a disabling heart attack shortly thereafter does not render Nurse Gibbons' response to his situation "a sham or otherwise illegitimate." Id. Plaintiff accordingly suffered no violation of his rights under the Fourteenth Amendment, and defendant Nurse Gibbons is entitled to the summary judgment she seeks.[2]

## IV. Analysis - Mr. Johnson

It requires little discussion to conclude that defendant Johnson can have no liability to plaintiff for any alleged deficiencies in the medical care plaintiff received at VCBR.[3] In this circuit, it is settled that "a medical treatment claim cannot be brought against non-medical personnel unless they were personally involved with a denial of treatment, deliberately interfered with prison doctors' treatment, or tacitly authorized or were indifferent to the prison physicians' misconduct." Lewis v. Anemone, 926 F.Supp. 69, 73 (W.D. Va. 1996), citing Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). Mr. Johnson is an administrative rather than a medical

---

[2]Because defendant has established her entitlement to judgment as a matter of law on plaintiff's claim, it is unnecessary for the Court to address her arguments on the question of qualified immunity.

[3]As with Nurse Gibbons, Mr. Johnson argues as a threshold matter that plaintiff states no claim for deliberate indifference based on the Eighth Amendment because he was only civilly committed when the incident at issue occurred. For the reasons dismissed above in connection with the claim against Nurse Gibbons, the Court in deference to plaintiff's pro se status construes his claim as encompassing his rights under the Fourteenth Amendment.

professional, and he was not involved in the treatment of plaintiff's medical problems. Johnson Aff. ¶¶ 7, 8(b)-(g). Instead. Johnson deferred to VCBR's medical staff for all decisions regarding plaintiff's medical condition and treatment. Johnson Aff. ¶¶ 5-7, 8(d)-(g). As such, Johnson cannot be liable for any harm plaintiff suffered as the result of the medical care he received at VCBR, and Johnson's motion for summary judgment will be granted.[4]

## V. Conclusion

For the foregoing reasons, defendants' Motions to Dismiss and/or for Summary Judgment will be granted, and summary final judgment will be entered in their favor. Defendant Dr. Militana will be dismissed without prejudice as a party to the action pursuant to Fed. R. Civ. P. 4(m). An appropriate Order shall issue.

Entered this 16th day of December 2013.

Alexandria, Virginia

/s/
James C. Cacheris
United States District Judge

---

[4] Again, because defendant Johnson is entitled to summary judgment on the merits of plaintiff's claim, the Court need not address his argument regarding qualified immunity.

10